Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA
BAKERSFIELD DIVISION**

| | | |
|---|---|---|
| **MICHAEL W. CLARK AND DENISE CLARK** | § § § § | **CIVIL ACTION NO:** |
| *Plaintiffs* | § § | |
| v. | § § | |
| **THOR MOTOR COACH, INC.; FORD MOTOR COMPANY; BARRY'S RV OUTLET; AND U.S. BANK, N.A.** | § § § § § § § | |
| *Defendants* | § | **JURY TRIAL REQUESTED** |

**COMPLAINT**

**I.  Parties**

1. Plaintiffs, MICHAEL W. CLARK and DENISE CLARK, are individuals that are now and have been at all times a citizens of the Taft, State of California.

2. Defendant, THOR MOTOR COACH, INC., hereinafter "TMC," is an Indiana corporation authorized to do and doing business in the State of California with its principal place of business located in the state of Indiana and is a citizen of the state of Indiana and is a warrantor of

-1-

the recreational vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

TMC's agent for service of process is C T Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

3. Defendant, FORD MOTOR COMPANY, hereinafter "FORD," is a Delaware and Michigan corporation authorized to do and doing business in the State of California with its principal place of business located in the state of Michigan and is a citizen of the states of Delaware and Michigan and is a warrantor of the recreational vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

FORD's agent for service of process is C T Corporation System, 330 North Brand Blvd., Suite 700, Glendale, California 91203.

4. Defendant, BARRY'S RV OUTLET, is a California corporation authorized to do and doing business in the state of California with its principal place of business located in California and is a citizen of the state of California and is the seller of a recreational vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

BARRY'S RV OUTLET is authorized to do and doing business in the State of California and may be served at 19637 Industry Parkway Drive, Bakersfield, CA 93308.

5. Defendant, U.S. BANK, N.A., is a Minnesota financial institution authorized to do and doing business in the State of California and its principal office is located at 800 Nicollet Mall Fl 2, Minneapolis, MN 55402.

## II. Jurisdiction

6. This court has jurisdiction over this lawsuit because the suit arises under the

Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III. Venue

7. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in Fresno County and this district and there is no other district where the suit may be brought.

### IV. Conditions Precedent

8. All conditions precedents have been performed or have occurred.

### V. Facts

#### A. The Transaction

9. On or about March 12, 2021, Plaintiffs purchased a new 2021 THOR QUANTUM RC25 bearing VIN: 1FDXE4FN7MDC14035, hereinafter "QUANTUM," from BARRY'S RV OUTLET.

The "QUANTUM" was purchased primarily for Plaintiffs' personal use. The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

10. The sales price of the QUANTUM was $160,161.70. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See ***Hughes v. Segal Enterprises, Inc.***, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** ***Chariton Vet Supply, Inc. v. Moberly Motors Co.***, **2:08CV47MLM, 2009**

**WL 1011500 (E.D. Mo. Apr. 15, 2009).**

11.   The contract of sale was assigned to Defendant, U.S. BANK, N.A. The contract which was assigned contained the following provision:

> **"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."**

### B.   Implied Warranties

12.   As a result of the sale of the QUANTUM by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the QUANTUM would pass without objection in the trade under the contract description, and that the QUANTUM was fit for the ordinary purpose for which such motor vehicles are purchased.

13.   Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.   Express Warranties

14.   In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the QUANTUM, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the QUANTUM had, in fact, repaired the defects.

15. Plaintiffs' purchase of the QUANTUM was accompanied by express warranties offered by the Defendants, TMC and FORD, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the QUANTUM.

16. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the TMC's warranty booklet and owners manual. Also, the Defendant, TMC, continued to agree to extended its express warranty with the Plaintiffs to cover defects that were discovered and tendered for repairs during the original factory warranty.

### D. Actionable Conduct

17. In fact, when delivered, the QUANTUM was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following in the Plaintiffs's own words:

> **"Bought RV 3/12/2021 from Barrys RV Outlet, Bakersfield, Ca.**
>
> **4/9/2021- Left California traveling to Idaho/Washington approx. 2500-3000 miles round trip**
>
> **4/10/2021 - Left LaPine, Oregon after spending night in Campground. About 100 miles into trip the traction Sensor light came on in a during a snow/wind storm of 70 mph. Called every Ford dealer ship on the way to Idaho, but no one would take us in due to rig being too big or a 2.5 week waiting list. So, we drove it to Idaho anyway.**
>
> **4/13/2021 - Left Idaho, Went on to Washington to our next destination. Traction sensor came on again and battled it thru wind/rain storm again. Called Ellensburg/Yakima Ford and they**

**referred us to RJ Tire Pro's & Auto Experts in Yakima Washington.**

**4/15/2021 - Traveled to Ellensburg where we had friends to stay with (luckily) and unloaded our stuff, because we were not sure how long it would take for the repairs. We traveled 55 miles (one way to RJ's) and using my friends' car. The RV stayed over night there.**

**4/16/2021 - Got a call from RJ's about 12:30pm to go back to Yakima to pick it up. It was fixed. $453.98 out of our pocket cause the warranty wasn't covered there. So that we 4 times going 55 miles (4 times for my friends car and us 2 times in motor home.) My husband and I got in the motorhome and started back to Ellensburg Washington, and about 15 miles on the I82, the traction Sensor light came on again after the repairs that was just done. We continued to Ellensburg and when we got to out destination, we texted the tire shop and they said to turn it off and then turn back, that didn't help.**

**4/18/2021 - we cut our trip 4 days short from our original plans due to we didn't want to be broke down on the side of the road and we had to return to work on a given date.**

**4/19/2021 - Headed home and fought winds 30-50 miles per hour on the way home, thought a few times it was going to tip over.**

**4/21/2021 - Called Ford got an appointment 5/3/2021 - to get recall (in which we got while on vacation) and the traction sensor control fixed. The recall was for a heat shield that was underneath engine cover.**

**4/22/2021 - Called warranty (was on phone 1.5 hrs) before I got help how to get our $453.98 back from warranty. (I will send all emails during this communication).**

**5/3/2021 - to Ford to get traction sensor repaired, recall fixed, also did some work to fixed door panels/wiring that was ripped out. (Bills attached).**

**6/28/2021 - 45 days later we got the RV back and got a check from warranty for the money we were out in Washington.**

> **6/26/2021** - we took it to Barrys RV to get the repairs done that they said to make a list on your trip and we will fix. We needed door fixed, cause when we bought it the shock on the door was pulled off, you can see where someone pulled it off and hitting awning. While on vacation I found it behind the passenger seat. The drawer and when we got there the slide out quit working. They said they ordered parts for the door and waiting on them.
>
> **8/14/2021** - they called us to put it up and, on the way, to Bakersfield from Taft, they called and said the slide out wasn't working, that do not come and pick it up yet. So we turned around and went back home. And said they were still waiting on the door parts, that the wrong ones came in.
>
> **8/19/2021** - pickup up RV, had plans the following weekend - still waiting on door parts. Called Thor and complained - Thor said door parts were never ordered
>
> **10/23/2021** - on another trip, traction sensor control out again. Called Ford have appointment 11/22/2021 - currently still there.
>
> **Called Thor 11/12/2021** - generator will not start due to batteries dead. Missed a trip (we were going to drive it anyway before taking it in on 11/22/2021)
>
> **11/22/2021** - took it to Ford. Ford said there are aftermarket parts on it that are affecting dash, camera's, stereo, ect.
>
> **11/24/2021** - Ford called and said they can't get the traction sensor control light to come on. They tried to communicate with the warranty company and kept getting run around. So I called Thor and got the run around too.
>
> **12/6/2021** - RV still at Ford, no ETA when it will get done. And Still needs to go to Thor (RV center to get things done on it). Currently 45 + 54 + 14 = 113 days we do not have the RV and counting."

18. Since purchase, Plaintiffs have returned their QUANTUM to the Defendants and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the QUANTUM, the more

-7-

significant and dangerous defects were not repaired. Defendants failed to repair the subject vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the QUANTUM, continues to this day to exhibit some or all of the non-conformities and/or defects described herein.

19. The defects experienced by Plaintiffs with the QUANTUM substantially impaired its use, value and safety.

20. Plaintiffs directly notified the Defendants of the defective conditions of the QUANTUM on numerous occasions.

## VI.   Causes of Action

**COUNT 1: VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

21. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

22. The QUANTUM is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

23. Plaintiffs are "purchasers" of consumer goods as defined under the Song-Beverly Consumer Warranty Act.

24. The Defendants, TMC and FORD, are a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

25. The sale of the vehicle to Plaintiffs was accompanied by an express written warranty.

26. The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of

the vehicle and or can cause serious bodily injury or death.

27. Plaintiffs brought their QUANTUM to BARRY'S RV OUTLET, an authorized repair facility, for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

28. Defendants have not repaired the non-conformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

29. Further, the sale of the QUANTUM to Plaintiffs was accompanied by implied warranties that the vehicle was merchantable and fit for a particular use.

30. Defendants have breached the implied warranties of merchantability and fitness for a particular use because the vehicle when sold would not pass without objection in the trade.

31. Despite their breach of the express and implied warranties, Defendants have refused Plaintiffs' demand for a refund or replacement.

32. By failure of Defendants to remedy the defects as alleged above, or to issue a refund or replacement, Defendants are in breach of their obligations under the Song-Beverly Consumer Warranty Act.

33. Defendants' continuing breach of their obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, Defendants and each of them are liable to Plaintiff for civil penalties in an amount as set forth below.

34. Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the

agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

35.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

36.     Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

37.     The Defendants are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

38.     The QUANTUM is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

39.     The express warranties more fully described herein above pertaining to the QUANTUM, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

40.     The actions of the Defendants as herein above described, in failing to tender the QUANTUM to Plaintiffs free of defects and/or refusing to repair and/or replace the defective QUANTUM tendered to Plaintiffs constitute a breach of the written and implied warranties covering the QUANTUM and hence a violation of the Magnuson-Moss Warranty Act.

41.     Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

42. As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth herein above, Plaintiffs have been damaged herein above in an amount in excess of $500,000.00 according to proof at trial.

43. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 3: LENDER LIABILITY**

44. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

45. Plaintiffs are indebted to U.S. BANK as a result of their purchase of the QUANTUM. Plaintiffs are entitled to assert all claims and defenses stated above against U.S. BANK as a defense to the debt.

**COUNT 4:   BREACH OF EXPRESS WARRANTIES**

46. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

47. The Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' QUANTUM or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendants

-11-

issued an expressed written warranty which covered the QUANTUM and warranted that the QUANTUM, was free of defects in materials and work quality at the time of delivery.

47. As alleged above, the Defendants breached its warranties by offering for sale and selling as safe to Plaintiffs a QUANTUM that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

48. In breach of the foregoing warranties, the Defendants have failed to correct said defects.

49. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 5:    BREACH OF IMPLIED WARRANTIES**

50. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

51. The Defendants impliedly warranted that Plaintiffs' QUANTUM which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

52. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the QUANTUM, had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

53. Because of the defects, Plaintiffs' QUANTUM is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

54. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 6:    NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

55. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

56. The Defendants had a duty to Plaintiffs to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

57. The Defendants breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

    a. Failure to design and manufacture a QUANTUM that did not harbor the defects alleged herein;

    b. Failure to notify Plaintiffs of the dangerous and defective condition of the QUANTUM when Defendants knew or should have known of the dangerous and defective condition;

    c. Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

    d. Failure to repair the QUANTUM in accordance with the express and implied warranties.

58. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 7: BREACH OF CONTRACT**

59. Plaintiffs re-allege and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

60. Plaintiffs would show that the actions and/or omissions of Defendants described herein above constitute breach of the sales contract, which proximately caused the direct and consequential damages to Plaintiffs described herein below, and for which Plaintiffs hereby sues.

61. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 8: NEGLIGENT REPAIR**

62. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

63. On numerous occasions, Plaintiffs delivered the QUANTUM to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

64. On each occasion that Plaintiffs returned the QUANTUM for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendants attempted repairs of the QUANTUM

-14-

pursuant to their obligations under the express and implied warranties. Defendants owed a duty of care to Plaintiffs to perform repairs on the QUANTUM in a good and workmanlike manner within a reasonable time. These Defendants breached this duty.

65. Defendants' attempted repairs of Plaintiffs' QUANTUM were done so negligently, carelessly, and recklessly as to substantially impair the QUANTUM 's use, value, and safety in its operation and use. At no repair attempt was Plaintiffs' QUANTUM fully and completely repaired by Defendants, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendants' attempts at repair. Nonetheless, each time Plaintiffs picked up the vehicle after Defendants' repair attempts, Defendants represented to Plaintiffs that the repairs were complete, and Plaintiffs relied thereon.

66. As a direct and proximate result of Defendants' negligent failure to repair the QUANTUM within a reasonable time or within a reasonable number of attempts, Plaintiffs were forced to drive a defective and dangerous QUANTUM in conducting their daily activities. As a further direct and proximate result of Defendants' failure to repair the QUANTUM in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the QUANTUM in for further repair attempts and to leave the QUANTUM for long periods of time at great inconvenience to themselves, and Plaintiffs sustained actual damages.

67. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiffs's health and well-being in the form of emotional distress.

-15-

### VII.   Economic and Actual Damages

68. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a..     Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

    b.     Loss of use;

    c.     Loss of the "benefit of the bargain";

    d.     Diminished or reduced market value; and

    e.     Costs of repairs.

### VIII.   Request for Rescission

69. Plaintiffs seek the remedy of rescission of the sales contract which is requested in the following paragraph.

70. Plaintiffs revoke their acceptance of the QUANTUM for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of Defendants that the defects in QUANTUM would be repaired. Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to them the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above. Plaintiffs also seeks cancellation of the debt and now offers to return the QUANTUM to Defendants.

### IX.   Attorney Fees and Costs

71. Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct

-16-

of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### X.    Multiple Damages

72.    The Defendants' conduct in violation of the Song-Beverly Consumer Warranty Act, Civil Code Section 1794, et seq, entitle Plaintiffs to an award for civil penalties and multiple damages.

73.    Plaintiffs have rightfully rejected or justifiably revoked acceptance of the goods and/or has exercised his right to cancel the sale pursuant to Sections 2711, 2712, and 2713 of the Commercial Code.

74.    Plaintiffs had previously accepted the goods, and, therefore, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform.

75.    The Defendants' failure to comply was willful and, therefore, the judgment should include, in addition to the amounts recovered, a civil penalty which shall not exceed two times the amount of actual damages.

### XI    Prayer

76    For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.    For general, special and actual damages according to proof at trial;

    b.    Rescinding the sale of the 2021 THOR QUANTUM RC25 bearing VIN:

1FDXE4FN7MDC14035 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c. For incidental and consequential damages according to proof at trial;

d. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e. Any diminution in value of the QUANTUM, attributable to the defects;

f. Past and future economic losses;

g. Prejudgment and post-judgment interest;

h. Damages for loss of use of vehicle;

I. Civil Penalties and/or Punitive damages;

j. Damages for mental anguish;

k. Attorney fees;

l. Costs of suit, expert fees and litigation expenses; and

m All other relief this Honorable Court deems appropriate.

## XII  Demand for Jury Trial

77. Plaintiffs hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdalton.law
(337) 371-0375

ATTORNEY FOR PLAINTIFFS